UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
DUBLIN DIVISION

| | | |
|---|---|---|
| MELANIE E. DAMIAN, as Receiver for PFGBI, LLC,  vs.  TRAE D. DOROUGH, GREGORY A. MORRIS, LLOYD E. MOSES, CHARLES T. CLEMENTS, THOMAS A. PETERSON, III, JOHN L. ROBISON, JR., and LARRY D. COLEMAN, | Plaintiff    Defendants | Civil Action No.  3:15-CV-_____ |

## COMPLAINT for DAMAGES

Plaintiff **MELANIE E. DAMIAN**, in her capacity as the Receiver ("Plaintiff" or the "Receiver") of **PFGBI, LLC** ("PFGBI"), sues **TRAE D. DOROUGH, GREGORY A. MORRIS, LLOYD E. MOSES, CHARLES T. CLEMENTS, THOMAS A. PETERSON, III, JOHN L. ROBISON, JR.,** and **LARRY D. COLEMAN** (collectively, the "Defendants"), for aiding and abetting breach of fiduciary duty, and states:

### JURISDICTION, PARTIES AND VENUE

1.  Plaintiff Melanie E. Damian is the Court-appointed Receiver for PFGBI, in connection with a Securities and Exchange Commission enforcement action, Case No. 1:12-cv-2296-TCB, pending in the United States District Court for the Northern District of Georgia (the "SEC Action"), pursuant to an order dated August 10, 2012 [SEC Action, ECF No. 20]. The Receiver brings the claim stated herein on behalf of PFGBI to recover

Complaint for Damages
U.S. District Court, Southern District of Georgia, Dublin Division
Civil Action No. 3:15-CV_____

Page 1 of 9

damages that the former officers and directors of Montgomery County Bankshares, Inc. ("MCBI"), the single purpose holding company of Montgomery Bank & Trust based in Ailey, Georgia (the "Bank"), caused to PFGBI when they were serving in that capacity in 2012.

2. Defendants were all officers and/or directors of MCBI at the time in 2012 when PFGBI made the payments to MCBI (for stock) that are the subject of this lawsuit.

3. All of the Defendants are believed to be residents of the State of Georgia. This Court has personal jurisdiction over Defendants and venue is proper in the Southern District of Georgia because: (a) Defendants have engaged in significant business in this District; (b) Defendants' wrongful conduct occurred in significant part in this District; and (c) PFGBI is one of the receivership entities which are defendants to the SEC Action pending in the Northern District of Georgia.

### General Overview

4. The majority of MCBI's common stock shares were sold to PFGBI for over $10 million in a transaction that closed on December 31, 2010 (the "Acquisition Transaction"). That transaction made PFGBI the owner of more than 70% of MCBI and, by extension, the Bank. The Bank had been essentially family owned and operated from 1954 until the Acquisition Transaction.

5. After PFGBI purchased the majority of the stock of MCBI in December 2010, the Bank wrote down several millions of dollars of loans each quarter until, in July of 2012,

federal regulators put the Bank into FDIC receivership because the Bank lacked sufficient reserves to cover the extensive losses in the Bank's loan portfolio.

6. In this lawsuit, Plaintiff seeks to recover the additional funds that PFGBI invested in MCBI in 2012, which investments were lost as a result of the Defendants' actions and inactions.

7. In 2012, Defendants knew that the Bank was worthless and thus an investment in its parent company MCBI (whose sole asset was the Bank) was also worthless. Further, in 2012, Defendants knew that Aubrey Lee Price ("Price") was the managing member of PFGBI and that, as such, Price owed fiduciary duties to PFGBI and its investors.

8. By the beginning of 2012, Price knew or should have known that MCBI and the Bank were worthless but he still caused PFGBI, during the first half of 2012, to invest in MCBI $1,608,000.00 (the "PFGBI Payments") in exchange for additional equity stock in MCBI, knowing that the stock was worthless, that MCBI would transfer the PFGBI Payments to the doomed Bank, and that PFGBI would never recover the PFGBI Payments from MCBI or the Bank. As such, Price breached his fiduciary duties to PFGBI.

9. By soliciting and accepting the PFGBI Payments to MCBI and facilitating Price's transfer of the PFGBI Payments to MCBI, at a time when they knew MBCI and the Bank were worthless and PFGBI would never recover the PFGBI Payments from MCBI or the Bank, Defendants aided and abetted Price in breaching his fiduciary duties to PFGBI.

10. When MCBI received the $1.6 million from PFGBI, Defendants caused MCBI to transfer those funds to the Bank, the effect of which was to delay the Bank's closure at the expense of PFGBI.

11. That delay was extremely valuable to Defendants because (other than Defendant Trae Dorough, "Dorough") they had long been insiders at the Bank and it was their conduct that caused the Bank's ultimate demise, as they had consistently made or approved risky loans and otherwise failed to properly manage the Bank's loan and investment portfolio. (In fact, their lending practices have been described by one of the Defendants as "'good ole boy' lending.") If their misdeeds had been revealed sooner to regulators, these Defendants would have faced personal liability. For example, when the FDIC took over the Bank in its capacity as receiver (the "FDIC-R"), it could have sued the Defendants for the losses resulting from their wrongful decisions; however, by artificially propping up MCBI, using mostly PFGBI's money, Defendants managed to delay the day of reckoning long enough for the respective statutes of limitations to run on certain of the claims against these Defendants.

## Defendants' Knowledge

12. Dorough was the Chief Executive Officer of MCBI, and Chief Executive Officer, President and Chief Lending Officer of the Bank in 2012. As a result, Dorough had the responsibility for overseeing all aspects of MCBI, including overseeing the Bank's lending practices, the performance of its loan portfolio and accurately reporting the Bank's

financial performance to investors, regulators and the general public. Dorough, as Chief Executive Officer and Chief Lending Officer of the Bank, and as a member of the Bank's Loan Committee and Coastal Loan Committee, had access to and a duty to carefully review the Bank's records, including each of the external loan reviews (each a "Powell Report" and collectively the "Powell Reports") that showed the Company's representations regarding its loan portfolio were inaccurate.

13. Gregory A. Morris ("Morris") was a member of the Board of Directors of MCBI and the Bank since 1993. He also served on the Executive Committee, Audit Committee and Compliance Committee of the Bank. Morris is a sophisticated banking expert. In fact, he is currently the Chairman of the Banks and Banking Committee of the Georgia House of Representatives. In light of his direct involvement overseeing the lending practices of the Bank, Morris had both the knowledge about the appropriate value of the Bank's loan portfolio and therefore the falsity of its reported value, and exposure to liability for negligence and breach of fiduciary duty claims in the event the Acquisition Transaction was not completed.

14. Lloyd E. Moses ("Moses") was on the Boards of Directors of MCBI and the Bank from 1991 through 2012. He served on the Executive Committee, Coastal Loan Committee and Compliance Committee of the Bank.

15. Charles T. Clements ("Clements") served on the Boards of Directors of MCBI and the Bank from 1984 through 2012. Clements was also a college trained banker

and the Executive Vice President of the Bank and one of its highest paid employees. He was involved in the day-to-day decision making at the Bank, including decisions about making loans.

16. Thomas A. Peterson, III was a member of Boards of Directors of MCBI and the Bank since 1984 and he served on the Audit Committee and Compliance Committee of the Bank. He is an experienced realtor and an attorney and former president of the Vidalia Chamber of Commerce.

17. John L. Robinson, Jr. was on the Boards of Directors of MCBI and the Bank since 1998 and, in 2012, served on the Loan Committee of the Bank.

18. Larry D. Coleman ("Coleman") served on the Board of Directors of MCBI and the Bank since 2003 and was on the Bank's Compliance Committee in 2012.

19. Each of the Defendants in this case was experienced and a long-time member of management of MCBI and the Bank (other than Dorough, as noted above) and, therefore, knew or should have known the true value of the Bank's loan assets 2012, at the time Defendants were soliciting and/or accepting new investments in MCBI, including the PFGBI Payments. This fact is undeniable in light of each of the Defendants' presence at Board of Directors meetings between 2010 and 2012.

20. Defendants also had knowledge of the Bank's public reporting requirements and were aware of the Bank's public statements of its ALLL throughout 2012. In particular, the Bank is required to publish so-called "Call Reports," pursuant to the Federal Financial

Institutions Examination Counsel - a report known as the "FFIEC 41." In the Bank's Call Reports for 2011 and 2012, leading right up until the Bank's collapse, the Bank – with the approval of the Defendants – continually misstated the value of its loan portfolio by materially understating ALLL. The Call Reports were publicly available and were relied on by PFGBI when deciding whether to invest in MCBI in 2012.

21. In sum, the Defendants knew the bank had no value in 2012 and were motivated to aid and abet Price to transfer the PFGBI Payments to MCBI in the first half of 2012 and thus breach his fiduciary duties to PFGBI. Defendants knew Price had fiduciary duties to PFGBI and acted purposely and with malice and the intent to injure PFGBI when they aided and abetted Price's breach of his fiduciaries duties.

22. As a result of the foregoing, the Receiver has retained undersigned counsel and agreed to pay such counsel a reasonable fee for their services.

23. All conditions precedent to the institution of this action have been performed, waived or excused.

### Count I
### Aiding and Abetting Price's Breach of Fiduciary Duties to PFGBI
### (All Defendants)

24. Plaintiff hereby realleges the allegations set forth in paragraphs 1 through 24, as if fully set forth herein.

25. As the managing member of PFGBI, Price owed fiduciary duties to PFGBI.

26. Defendants knew that Price owed fiduciary duties to PFGBI because he was

the managing member of PFGBI.

27. By causing PFGBI to transfer the PFGBI Payments to MCBI when he knew that MCBI and the Bank were worthless and PFGBI would never recover the PFGBI Payments, Price breached his fiduciary duties to PFGBI.

28. By soliciting and accepting the PFGBI Payments to MCBI and facilitating Price's transfer of the PFGBI Payments to MCBI in 2012, when they knew MCBI and the Bank were worthless and PFGBI would never recover the PFGBI Payments from MCBI or the Bank, among other wrongful conduct described above, Defendants aided and abetted Price in breaching his fiduciary duties to PFGBI.

29. In doing so, Defendants acted purposely and with malice and the intent to injure PFGBI.

30. Defendants' wrongful conduct proximately caused damage to PFGBI because PFGBI received worthless shares of MCBI in exchange for the PFGBI Payments and the PFGBI Payments could not be recovered from MCBI or the Bank.

WHEREFORE, Plaintiff, Melanie E. Damian, as the Receiver for PFGBI, LLC, respectfully prays:

    a. that Defendants be served and required to answer as provided by law;

    b. for judgment for Plaintiff against the Defendants for the total amount of the PFGBI Payments ($1,608,000.00), plus prejudgment and post-judgment interest;

Complaint for Damages
U.S. District Court, Southern District of Georgia, Dublin Division
Civil Action No. 3:15-CV_____

Page 8 of 9

c.  for such other and further relief that this Court deems to be appropriate and just.

Respectfully submitted this day, August 27, 2015.

GANNAM, GNANN & STEINMETZ LLC



By:  CHRISTIAN J. STEINMETZ III
Georgia Bar No. 278260

ATTORNEYS FOR PLAINTIFF

Post Office Box 10085
Savannah, Georgia  31412-0285
Tel:   912.232.1192
Fax:  912.238.9917
Email: cjs@ggsattorneys.com

Additional Counsel (*pro hac vice forthcoming*):
/s/ Kenneth Dante Murena
KENNETH DANTE MURENA
Florida Bar No. 147486
DAMIAN & VALORI LLP
1000 Brickell Avenue, Suite 1020
Miami, Florida 33131
Telephone: 305-371-3960
Facsimile: 305-371-3965
Email: kmurena@dvllp.com
LEAD COUNSEL FOR PLAINTIFF

Complaint for Damages
U.S. District Court, Southern District of Georgia, Dublin Division
Civil Action No. 3:15-CV_____

Page 9 of 9